## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ENVIRONMENTAL, SAFETY & HEALTH, INC., | ) ) ) | |
| PLAINTIFF, | ) ) | |
| V. | ) ) | CASE NO. CIV-08-1215-A |
| INTEGRATED PRO SERVICES, LLC D/B/A PRO TREE SERVICES, | ) ) ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION

Plaintiff Environmental Safety & Health, Inc. (ES&H) has instituted this action alleging breach of contract by Defendant Integrated Pro Services, LLC d/b/a/ Pro Tree Services (IPS). Currently before the Court is Plaintiff's Motion for Summary Judgment. Defendant has responded, and Plaintiff has replied. Thus, the matter is at issue and ready for disposition.

## I. INTRODUCTION

ES&H is a Delaware corporation, headquartered in Knoxville, Tennessee. IPS is a limited liability company with its principal place of business in Belle Chasse, Louisiana. This Court has jurisdiction under 28 U.S.C. § 1332, based on diversity of citizenship because the parties are of diverse state citizenship and the amount in controversy exceeds $75,000.00. The events giving rise to the breach of contract complained of occurred in Lincoln County, Oklahoma which is within the Western District of Oklahoma.

The dispute before the Court arises from a Prime Contract/Order for services entered into by IPS with various cities and municipalities located in Lincoln County to remove debris from an ice storm which struck Lincoln County on or about December 9 and December 10, 2007. Plaintiff's Second Amended Complaint, 2. On December 17, 2007, IPS executed a written contract with ES&H establishing ES&H as IPS's subcontractor for the purposes of removing vegetative debris from the ice storm. Id. ES&H alleges that it has not been paid the total amount owed under the contract, and that a principal balance of $202, 952.25 remains. Plaintiff's Motion for Summary Judgment, 3. It further claims that IPS owes damages in the amount of $32,916.40, the interest ES&H paid on a loan it was forced to take out due to IPS's failure to pay the remaining balance owed. Plaintiff's Motion for Summary Judgment, ¶ 9 p. 3 and Affidavit of William P. Garibay, ¶ 11 (attached to Plaintiff's Motion for Summary Judgment).

IPS contends that ES&H improperly asserts that the amount due from IPS is governed by the original invoice submitted by IPS to the cities and municipalities, and does not take into account that the original invoices were repeatedly "revised downward by demand of the customers in order to expedite payment." IPS Response, 1. IPS also contends that it has substantially paid ES&H, and that the amount owing on the contract is $1415.75.[1] IPS

---

[1]IPS' response brief actually indicates that ES&H admits it has received $430,611.75 in payments from IPS, and thus based on ES&H's "out of pocket cost" on the contract, IPS only owes $1,514.75. IPS Response, 1. However, it appears those numbers are incorrect based on the affidavit of Mr. Cooper. IPS Response, Ex. 1, p. 2. Using Mr. Cooper's numbers, IPS has paid $439, 611.75, and if the Court were to use ES&H's "out of pocket cost" as urged by IPS, IPS would only owe ES&H $1,415.75.

Response, p. 1, Ex. 1 p. 2 (Affidavit of Troy Cooper, CFO of IPS).  IPS arrives at this amount by claiming that ES&H has acknowledged receipt of payment of $439,611.75, and that ES&H's "out of pocket cost" on the Lincoln County project was $441,027.50. IPS. Response, p. 1, Ex. 1 p.  2.

In Reply, ES&H states that there is nothing in the written contract between it and IPS that provides for downward adjustment of the amount payable, that the parole evidence rule precludes the Court's consideration of matters outside the contract, and that the interest accrued on loans ES&H took out to ameliorate the effect of non-payment is a foreseeable consequence of the breach of contract.  ES&H Reply, 1.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.  Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts that might affect the outcome of the suit under the governing law."  Id.

In actions involving breach of contract, where conflicting evidence is presented so that

an ambiguity in a contract could legitimately be resolved in favor of either party, it is for the ultimate finder of fact to interpret the contract. <u>SCO Group, Inc. v. Novell, Inc.</u>, 578 F.3d 1201, 1215 (10th Cir. 2009), <u>cert. dismissed</u>, 131 S.Ct. 51 (2010).  However, the question as to whether an ambiguity *exists* in the first place is one of law that may be decided summarily by the court. If the language is clear, the parties' intentions are not at issue. <u>Gomez v. American Elec. Power Service Corp.</u>,  726 F.2d 649, 651 (10th Cir. 1984).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. <u>Adler v. Wal–Mart Stores, Inc.</u>, 144 F.3d 664, 671 (10th Cir.1998). Once the moving party has satisfied its burden, the nonmoving party must show that there is a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). The  nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement <u>Anderson</u>, 477 U.S. at 256. Rather,  Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324.  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>SCO Group, Inc.</u>, 578 F.3d at 1214 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

## III. UNDISPUTED FACTS

The submissions of the parties, including the pleadings, motions, and evidence

supplied in connection with the motion under consideration show that there is no dispute as to the following material facts.

IPS entered into a Prime Contract/Order for services with various cities and municipalities located in Lincoln County to remove debris from an ice storm which struck Lincoln County on or about December 9 and December 10, 2007. <u>See</u> Plaintiff's Second Amended Complaint, ¶ 10; Answer to Plaintiff's Second Amended Complaint, ¶ 3.   On December 17, 2007, IPS executed a written contract with ES&H establishing ES&H as IPS's subcontractor for the purposes of removing vegetative debris from the ice storm. <u>See</u> Contract/Order for Services (attached to Plaintiff's Motion for Summary Judgment ("Contract")); <u>see also</u> Plaintiff's Second Amended Complaint, ¶ 11; Answer to Plaintiff's Second Amended Complaint, ¶ 3. The Contract obligates IPS to pay ES&H "full and complete compensation for performing the work," provides that  ES&H agrees to "accept payment in accordance with Schedule B of this Contract," and provides that IPS must make said payments "not later than five (five) days after it has been paid by the Client for the Work or within 45 days of completion, whichever occurs first." Contract/Order for Services, ¶ 2 (attached to Plaintiff's Motion for Summary Judgment).  Plaintiff's Motion for Summary Judgment, ¶ 3; <u>see also</u> Answer to Plaintiff's Second Amended Complaint, ¶ 3.

ES&H completed the services under the Contract over two years ago, and the time period for compensating ES&H under the terms of the Contract have long passed. <u>See</u> Plaintiff's Second Amended Complaint, ¶ 13; Answer to Plaintiff's Second Amended Complaint, ¶ 3. ES&H's original invoice relating to the work performed under the Contract

5

with IPS totaled $642,564.00. <u>See</u> Plaintiff's Motion for Summary Judgment, ¶5; IPS Response, 2. There is no dispute that ES&H submitted properly prepared invoices for work which were accepted by IPS. IPS has paid $439,611.75 to ES&H. <u>See</u> Plaintiff's Motion for Summary Judgment, ¶ 5-6; Plaintiff's Second Amended Complaint, ¶ 21; Answer to Plaintiff's Second Amended Complaint, ¶ 5.[2] Based on the final invoice amount, minus payments made, there is a principal balance of $202,952.25 remaining pursuant to ES&H's contract with IPS. Affidavit of William P. Garibay, ¶ 4-9 (attached to Plaintiff's Motion for Summary Judgment). On October 24, 2008, ES&H made a formal written demand for IPS to pay this sum, and IPS responded that it was unwilling to pay the total sum ES&H claimed was owing within the time frame set forth in the demand letter. Plaintiff's Second Amended Complaint, ¶ 15-16; Answer to Plaintiff's Second Amended Complaint, ¶ 4.

The Contract provides that it constitutes the entire agreement and understanding between IPS and ES&H, that no covenants and restrictions not contained within the contract are binding, and that the Contract can only be modified in writing signed by both parties. Contract/Order for Services, ¶ 11 (attached to Plaintiff's Motion for Summary Judgment). There is no evidence showing a written amendment or revision to the Contract between IPS and ES&H.

---

[2]ES&H actually contends that IPS has paid it $389,611.75, but it appears that figure is incorrect and the $439,611.75 is the correct figure. <u>See</u> Plaintiff's Motion for Summary Judgment, ¶ 5-6 (original invoice $642,564 and a remaining principal balance of $202,952.25. Subtracting the remaining balance from the invoice indicates that $439,611.75 has been paid under the contract, which is also what IPS claims it paid.). <u>See also</u> Affidavit of William P. Garibay, ¶ 3-8 (attached to Plaintiff's Motion for Summary Judgment).

The paragraph entitled "Compensation" on Schedule B of the Contract provides that IPS will compensate ES&H "for Work satisfactorily performed and accepted by IPS, and for which IPS has received payment from its Client." Contract/Order for Services, Schedule B ¶ 1 (attached to Plaintiff's Motion for Summary Judgment). With regard to the amount of compensation, the Contract provides that ES&H "shall be compensated by payment of fixed price, as set forth in Schedule A herein.  Fixed price costs shall include ALL [ES&H's] costs and profit for accomplishing the Work, including, but not limited to, all costs of labor, supervision, facilities, equipment, materials, supplies, delivery of equipment (all off-loading by others), taxes, insurance, overhead, and general and administrative expenses." Contract/Order for Services, Schedule B, ¶ 2 (attached to Plaintiff's Motion for Summary Judgment). The paragraph labeled "Payment" on Schedule B provides that "[p]roperly prepared invoices, for Work which has been completed and accepted by IPS" will be approved, and that "[a]pproved invoices will be paid by IPS within five (5) daysafter [sic] it has been paid by its Client or 45 days from completion, whichever occurs first." Contract/Order for Services, Schedule B ¶ 4.3 (attached to Plaintiff's Motion for Summary Judgment).

According to IPS, the original invoices submitted by it to its client cities and municipalities were "repeatedly revised downward by demand of the customers in order to expedite payment."  IPS Response, Ex. 1, ¶ 2-3. IPS offered to pay ES&H $441,027.50 "to make them 100% whole on their direct costs related to the contract."  Id. at ¶ 5.  "Direct costs" is neither defined by IPS nor the Contract; the only measure of compensation is that

contained in ¶ 2 of Schedule B.

IPS paid $200,000 to ES&H in May 2008, and paid $50,000 to ES&H in October 2008.  Affidavit of William P. Garibay, ¶ 4 (attached to Plaintiff's Motion for Summary Judgment).  ES&H received further payment towards the principal amount of the invoice when IPS agreed to pay ES&H $181,129 as a subcontractor for a project IPS had contracted to do for the United States Department of Agriculture.  Affidavit of William P. Garibay, ¶ 5 (attached to Plaintiff's Motion for Summary Judgment).  Two further payments of $2,987.79 and $5,494.96 were made when IPS agreed to pay ES&H 10% of the proceeds on projects known as the Defeated Creek Project and Bennett Fork Phase 2 Project in exchange for IPS's agreement to serve as bonding agent on the projects.  Affidavit of William P. Garibay, ¶ 7-8 (attached to Plaintiff's Motion for Summary Judgment).

At this time, a principal balance of $202,952.25 is due from IPS to ES&H pursuant to the terms of the Contract.  Defendant IPS refuses to pay this amount, claiming that only "actual direct job costs" in the amount of $441,027.50 are owed pursuant to the contract, $1415.75 of which remains unpaid.

## IV. DISCUSSION

At the outset, it should be noted that because IPS does not dispute ES&H's contention that Oklahoma law is applicable to the contract in question, the Court has made reference to Oklahoma law in resolving the substantive issues raised in the motion before it.  See Plaintiff's Motion for Summary Judgment, 4; IPS Response.  Of course, federal law governs the standard for granting or denying summary judgment in this diversity case.  Eck v. Parke,

Davis & Co., 256 F.3d 1013, 1016 (10th Cir. 2001).

The dispute between the parties is straightforward. ES&H, as subcontractor, has not been paid $202,952.25 owed by IPS pursuant to an agreement to clean up vegetative waste created by an ice storm in Lincoln County. IPS claims that this amount is not owed because IPS repeatedly agreed with its clients to negotiate the invoices downward in order to "expedite payment," and that ES&H was "well aware" of this fact.  IPS Response, Ex. 1 ¶ 3-4.  ES&H contends that whether or not it knew that IPS had to adjust its initial bids to the cities and municipalities has no impact on IPS's  obligation to pay ES&H compensation per the terms of the Contract.  Reply, 3.  Citing the part of the Contract requiring amendments to be in writing and executed by both parties, ES&H contends that there is no evidence that it agreed to accept compensation less than that owed under the contract, regardless of the fact that IPS was negotiating with its own client, and apparently agreed to accept less than the amount IPS was owed to receive expedited payment.  Plaintiff's Reply, 3-4.  ES&H is correct.

Under Oklahoma law, a contract is "ambiguous if it is reasonably susceptible to at least two different interpretations." M. J. Lee Construction Co. v. Oklahoma Transportation Authority, 125 P. 3d 1205, 1213 (Okla. 2005). "The mere fact that the parties press for different interpretations" of a contractual provision does not render the provision ambiguous. Id. at 1210.  Nor does the fact that parties to a contract interpret a section thereof differently create an ambiguity. Instead, the Court must examine the contract to determine if the section is reasonably susceptible to different interpretations. M. J. Lee, 125 P. 3d at 1213. To do so,

the Court must examine "the language of the entire agreement," and consider the contract "as a whole so as to give effect to all its provisions," each provision helping to explain the others. Pitco Production Company v. Chaparral Energy, Inc., 63 P.3d 541, 546 and n. 20 (Okla. 2003). The determination of whether a contract is ambiguous is made only after application of the pertinent rules of construction. State ex rel. Commissioners of Land Office v. Butler, 753 P.2d 1334, 1336-37 (Okla. 1987).

The Oklahoma statutory rules of construction establish that the language of a contract governs its interpretation; if the language is clear and explicit and does not involve an absurdity, Okla. Stat. tit. 15, §§ 154, 155, a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others, Okla. Stat. tit. 15, § 157; a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect, Okla. Stat. tit. 15, § 159; words of a contract are to be given their ordinary and popular meaning, Okla. Stat. tit. 15, § 160; and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates, Okla. Stat. tit. 15, § 163.

First, the Contract submitted by ES&H shows that any change in the agreement must be signed and in writing. Second, IPS has not disputed that under the original terms of the Contract, $202,952.25 is still owed by it to ES&H. Third, IPS has neither provided evidence of a signed, written amendment to the Contract, nor pointed out a single provision in the Contract that allows it to pay less than the amount it originally agreed to pay ES&H in the event IPS's clients paid it less than the amount originally invoiced. Fourth, IPS has provided

10

*no* legal authority supporting its claim that it owes less to ES&H simply because ES&H was "well aware" that IPS was repeatedly negotiating invoices downward with its clients. Indeed, the only Oklahoma authority cited by IPS in support of its objection is one concerning the standard governing state summary judgment proceedings, in particular, that when affidavits have created a substantial dispute as to the amount owed, summary judgment is precluded.

On the other hand, ES&H correctly argues that Oklahoma courts have long upheld the parol evidence rule where a contract is unambiguous. Plaintiff's Reply, 4. "Where a contract is unambiguous on a matter, 'its language is the only legitimate evidence of what the parties intended.'" Scott ex rel. Brame v. Independent School Dist. No. 22 of Pushmataha County, 233 P.3d 390, 394 (Okla.Civ.App. 2009) (quoting Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985). Put another way, the "intention of the parties may not be determined from the surrounding circumstances, but must be gathered from the four corners of the instrument." Id. (citing McClain v. Ricks Exploration Co., 894 P.2d 422, 428 (Okla. Civ. App. 1994) and Okla. Stat. tit. 15 §§ 154, 155).  The Court finds the Contract to be unambiguous with regard to the compensation owed by IPS to ES&H.  Thus, it is the only evidence of the parties' intent.  IPS points to nothing contained in the Contract that disputes this conclusion.

IPS does not argue that payment by its clients was a condition precedent to its performance under its contract with ES&H, thereby waiving any such contention. In any event, the Court would have rejected such an argument even if it had not been waived. Such are often referred to as "paid if paid," "pay if paid" or  "paid when paid" clauses. The only

provision in the Contract which IPS could argue makes its payment to ES&H contingent on receipt of payment from its clients is the second paragraph of the first clause of Schedule B, "Compensation and Payment." Schedule B, ¶ 1 (attached to Plaintiff's Motion for Summary Judgment). That paragraph states that "IPS will compensate [ES&H] for Work satisfactorily performed and accepted by IPS, and for which IPS has received payment from its Client." Id.

In Oklahoma, a statement such as this is not enough to create any ambiguity as to the existence of a condition precedent requiring payment to ES&H to depend on the future performance of IPS's clients. "A condition precedent of a contract is one which calls for the performance of some act or the happening of some event after the contract is entered into and upon the performance or happening of which its obligations are made to depend." Rollins v. Rayhill, 191 P.2d 934, 937 (Okla. 1948), quoting Northwestern Nat'l Life Ins. Co. v. Ward, 155 P. 524, 526 (Okla. 1915). "However, a construction which will make a contract dependent on future contingencies is not favored and courts will not construe contract stipulations as conditions precedent unless required to do so by the plain, unambiguous language of the contract." In re Matter of Dillon's Estate 575 P.2d 127, 131 (Okla. Civ. App. 1977).

Oklahoma's approach to such conditions precedent is consistent with that of other courts which have specifically considered the issue raised by the current motion. Courts have uniformly required much stronger language to establish payment to the general contractor by the client as a condition precedent to the general contractor's payment to a subcontractor.

As stated in Professor Williston's treatise on contracts:

> These clauses, which provide that a contractor will pay the subcontractor (or that a subcontractor will pay a sub-subcontractor) "when" or "if" the contractor receives payment from the owner, have found their way into standard form construction contracts for over 50 years and became ubiquitous in the 1980s. The majority of courts have long held that, *unless the clause clearly and unequivocally evidences an intent that the contractor's receipt of payment by the owner is an express condition precedent to the contractor's duty to pay the subcontractor, the clause will be construed as creating an absolute obligation on the part of the contractor to pay, subject only to a time limitation, so that even if the owner becomes insolvent or otherwise does not pay the contractor, the contractor or its surety will nevertheless be obligated to make payment to the subcontractor.* In other words, the courts will typically construe "pay if paid" or "pay when paid" clauses strictly; unless the parties clearly intend that the subcontractor is to bear the risk of the owner's nonpayment, the contractor will bear it, and the subcontractor will be entitled to payment when the contractor gets paid or after a reasonable time even if the contractor has not been paid. On the other hand, it has long been the rule that, absent a statute prohibiting the provision, if parties clearly do intend that the risk of nonpayment be borne by the subcontractor and *clearly express that intent by making the right of the subcontractor to be paid expressly conditional on the receipt of such payment by the contractor* from the owner, they may by contract allocate that risk, and the courts will enforce that freely bargained-for allocation of risk.

Richard A. Lord, Williston on Contracts, § 19.59 (4th ed., 2011) (emphasis added). Similarly,

in a practice guide for construction contracts under Oklahoma law, it is stated:

> Subcontracts often provide that payments to subcontractors shall be payable "as and when" the contractor receives payment from the owner. When the contract at issue clearly provides that payment by the owner is a condition precedent to the general contractor's duty to pay, the courts will enforce a "paid if paid" clause. In doing so, the courts recognize that such a clause shifts the risk of non-payment from the general contractor to the subcontractor. The key to enforcing such clauses, and shifting the payment risk, appears to be a clear intent demonstrated by unambiguous contract language that the payment by the owner is a condition precedent to general contractor's duty to pay. Otherwise, the clause will be read to only postpone payment for a reasonable period of time.

13

Randi A. Donaldson, 9 Okla. Prac. Construction Law § 2:7 (2010 ed.).

The Tenth Circuit Court of Appeals, applying Oklahoma law, addressed a similar issue in considering whether a subcontractor had the right to make a claim on the general contractor's surety contract where the owner had not paid the general contractor. In response to the surety's claim that the subcontractor was not a beneficiary of the surety agreement because its payment was contingent on payment to the general contractor, the Tenth Circuit stated:

> In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties *it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner.*

Byler v. Great Am. Ins. Co., 395 F.2d 273, 277 (10th Cir. 1968) (applying Oklahoma law) (emphasis added).

An example of a clause that *was* found adequate to express the parties' intent to create a condition precedent to performance was considered in a recent decision by United States District Judge Timothy D. DeGiusti. In that case, construed under Oklahoma law, the general contractor argued that its client's payment to it under the prime contract was a condition precedent to the subcontractor's right to receive payment under the subcontract. The contract specifically stated that "payment ...by Owner is a condition precedent to [general contractor's] duty to pay [subcontractor]." Swanda Brothers, Inc. v. Chasco

Constructors, LTD, LLP, No. CIV-08-199-D, 2010 WL 476639 at * 2 (W.D. Okla. Feb. 4, 2010).  Judge DeGiusti found this language to be "clear and express language stating that [the general contractor's] receipt of payment by [the owner] is a 'condition precedent' to [the general contractor's] obligation to pay its subcontractors." Id. at *3.  Accordingly, even if IPS raised a "paid if paid" argument in opposition to the pending motion, the Contract neither clearly nor unequivocally makes the client's payment to IPS a condition precedent to IPS's obligation to pay ES&H.

In light of the forgoing, the Court grants partial summary judgment in favor of ES&H, and finds that IPS owes ES&H $202,952.25, the principal amount due on the Contract. The Court notes that Plaintiff ES&H has also sought damages in the form of interest it paid on a loan allegedly taken out to maintain cash flow while awaiting payment of the principal amount by IPS.  ES&H has not cited to any provision in the contract that would allow for an award of interest nor any case law to support such an award. Moreover, ES&H has failed to show an absence of a genuine dispute that the interest paid on the loan was caused by the breach of IPS, or that it is entitled to judgment for that amount as a matter of law.

The amount still outstanding under the contract is certain, and although the parties have failed to provide specific information regarding the dates work was completed and the dates interim partial payments were made, it is clear that this information is available to the parties and is thus calculable.  Accordingly, now that the substantive issue has been resolved, the parties should be able to resolve any issue as to the exact amount owing in light of the findings contained herein. In light of this probability, the Court will stay the deadlines

15

currently imposed by the scheduling order for 30 days to allow the parties an opportunity to confer and reach an agreement as to the amount of the final judgment herein. The parties are to inform the Court within 30 days of this order as to their success in this regard. After receiving this progress report, the Court will take appropriate action – whether it be entering a new scheduling order or entering judgment without the need for a trial to determine the total damages suffered by ES&H under its contract with IPS.

**IT IS SO ORDERED THIS 8th DAY OF NOVEMBER, 2011**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE